UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BILLY JOE HANSEN,

      Petitioner,

v.                                                                               Case No. 2:12-cv-193
                                                         HON. GORDON J. QUIST

JEFFREY WOODS,

      Respondent.
_____/

# REPORT AND RECOMMENDATION

Petitioner Billy Joe Hansen, filed this petition for writ of habeas corpus challenging his conviction for two counts of Operating While Intoxicated Causing Death in violation of Mich. Comp. Laws § 257.625(4)(a). On July 22, 2007, Petitioner caused a multi-vehicular accident when he failed to stop at a stop sign. Two people were killed and Petitioner's blood alcohol content was between .12 and .14. Petitioner entered into a plea agreement with the prosecutor and pleaded guilty. Petitioner was sentenced to two consecutive 7 to 15 year terms of imprisonment. Respondent filed an answer and complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

      Petitioner alleges that:

      I. Petitioner is entitled to withdraw his guilty plea because the court failed to sentence Petitioner in accordance with the original Cobb evaluation; Petitioner's plea was involuntary because he believed that there was a Cobb agreement of concurrent sentences and Petitioner was denied effective assistance of counsel.

      II. Petitioner is entitled to fulfillment of the plea bargain or he is entitled to withdraw his plea.

      III. Petitioner was denied effective assistance of appellate counsel.

> IV. Petitioner is entitled to specific performance of the plea bargain where the court failed to sentence him to concurrent sentences in violation of the plea agreement.
>
> V. The Michigan Court of Appeals erred by not remanding the case to the trial court when the trial court failed to follow the applicable court rules when changing a pertinent part of the official court transcript.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that it was improper for the court to sentence him to consecutive terms. Petitioner states that at the time he entered into the plea agreement he believed that he would receive concurrent terms of imprisonment. Petitioner argues that the plea agreement was violated when the court sentenced him to consecutive terms. Further, counsel informed Petitioner prior to entering into the plea agreement that the trial judge previously stated at a conference that he was disinclined to sentence Petitioner to consecutive terms. At the sentencing hearing, Petitioner argues that the prosecutor violated the agreement by requesting that Petitioner receive consecutive terms of imprisonment.

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.*

A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992). In the present case, after a thorough interrogation of Petitioner, the state judge found that Petitioner's plea of guilty was entered knowingly and voluntarily.

> THE COURT: Now, there has been a plea agreement that has been stated here in open court on the record between the prosecutor and your attorney, wherein in exchange for your plea of guilty to Count One, operating while intoxicated, causing the death of Christopher Mort, and Count Two, operating while intoxicated, causing the death of Ella Joy Yoder, the prosecution will dismiss Counts Three, Four, Five, and Six, which charge, respectively, operating a motor vehicle while your license was suspended or revoked, and by the operation of the vehicle, causing death of another person. And in Count Four, the same, operating motor vehicle while operator's license was suspended or revoked, causing the death of another person. Count Three, the person killed being Christopher Mort; Count Four, the person killed being Ella Joy Yoder. And Count Five, operating while intoxicated -- I'm sorry -- Count Five, operating while having marijuana in your body, causing the death of Christopher Mort. And Count Six, operating while having marijuana in your body, causing the death of Ella Joy Yoder. And so Counts Three, Four, Five, and Six will be dismissed as part of the plea agreement.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Further, you are preserving your right to raise the issue of the legality of the search of your blood, the seizure of your blood and search of your blood, under the decision of the Michigan Supreme Court In People versus Reid, I believe that's R-e-i-d –
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: -- should the Court of Appeals grant leave.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Further, as a further consideration for your plea of guilty to Counts One and Two, the prosecution will not seek to subject you to the possibility of an enhanced sentence under Michigan's habitual offender statute. And just satisfy me, was there a notice flied?

> MR. STONE: Yes, there was, Your Honor.
>
> THE COURT: Was that habitual offender second?
>
> MR. STONE: Third, Your Honor. It would have doubled the penalty, potentially.
>
> THE COURT: All right. It was a habitual third offense.
>
> MR. SMITH: Yes.
>
> THE COURT: Now, is that your understanding of the plea agreement, Mr. Hansen?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has anyone promised you anything beyond that plea agreement?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone threatened you?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Is it your own choice to plead guilty to two counts of operating while intoxicated, causing death?
>
> THE DEFENDANT: Yes, Your Honor.

Plea transcript at 8-10 (Docket #23).

> Prior to the plea, Petitioner's counsel addressed the court stating:
>
> MR. SMITH: Your Honor, one other matter. I would like to indicate for the record that defendant has been apprised early on of the applicability of MCL 769.36, giving the Court discretion for consecutive terms of sentence in multiple death cases. And also that there was a plea conference - - informal plea conference - - where the Court indicated that the Court wasn't inclined to do so.

*Id.* at 5. Petitioner first raised this issue in his motion for relief from judgment. In denying that motion, the trial judge reviewed the transcript. Apparently believing that the transcript was in error,

- 6 -

the judge listened to the recording of the plea hearing. After reviewing the recording, the judge found that the official transcript was in error. Defense counsel's last statement should have read:

> SPEAKER #02: one other matter. I would like to indicate for the record that defendant has been apprised early on of the applicability of MCL 769.36, giving the Court discretion for consecutive terms of sentence in multiple death cases. And also that there was a plea conference - - informal plea conference where the Court indicated that the Court *was* inclined to do so.

Opinion And Order Denying Defendant's Motion For Relief From Judgment, at 3, n.4 (Docket #28). However, the court did not correct the transcript. Further, the court presumed that the official transcript with the word "wasn't" was the accurate transcript. Nevertheless, even when the official transcript is presumed accurate, Petitioner was not entitled to relief.

> After taking the factual basis for Petitioner's plea, the court further addressed counsel.
>
> THE COURT: All right. And is either counsel aware of any promises, threats, or Inducements other than those already disclosed on the record?
>
> MR. STONE: The People are not, Your Honor.
>
> MR. SMITH: No, Your Honor. The defendant is entering this matter -- this plea of his own free will. The only consideration is that it is obviously a plea agreement, and he realizes the risks of going to trial and his exposure.
>
> THE COURT: But all the consideration has been placed on the record.
>
> MR. SMITH: Absolutely.
>
> THE COURT: All right. Mr. Stone, in your opinion, has the Court Complied with MCR 6.302, Subrules (B) through (D)?
>
> MR. STONE: Yes, Your Honor,
>
> THE COURT: Mr. Smith?
>
> MR. SMITH: Yes, Your Honor,


> THE COURT: All right. The Court finds that the defendant's plea of guilty to two counts of operating a motor vehicle while intoxicated causing death is knowingly and intelligently made. It is voluntarily and understandingly made, The Court further finds that defendant's plea is accurately made, The Court is satisfied that there is a sufficient factual basis for finding that the defendant is guilty of the two counts to which he has tendered his plea. The Court accordingly accepts the defendant's plea of guilty to operating a motor vehicle while intoxicated causing the death of Christopher Mort and operating a motor vehicle while intoxicated causing the death of Ella Joy Yoder. The Court accordingly accepts the defendant's plea of guilty to those two counts.

Plea transcript at 15-16 (Docket #23).

Petitioner was sentenced on June 12, 2008, to consecutive terms of imprisonment. Petitioner did not object to being sentenced to consecutive terms of imprisonment. Prior to the sentencing, the court discussed the possibility of sentencing Petitioner to consecutive terms of imprisonment. The court explained that consecutive sentencing was "optional within the discretion of the Court." Sentencing transcript at 8 (Docket #24). Defense counsel and the prosecutor agreed that the court could sentence Petitioner to consecutive sentences.

Petitioner's assertion that his plea agreement was breached because he was sentenced consecutively is not supported by fact. Petitioner has failed to show that any promise in the plea agreement was broken. In fact, the record supports the conclusion that Petitioner was very aware of the possibility that he could be subjected to consecutive sentences at the time he entered his plea. Petitioner has failed to show that the trial court's decision and the Michigan appellate court's decision denying this issue was unreasonable.

Petitioner claims that his trial counsel was ineffective by misleading him into a plea bargain based upon an alleged promise that his sentences would run concurrently, and appellate counsel was ineffective for failing to assert claims that Petitioner argued in his motion for relief from

judgment. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

In *Lafler v. Cooper*, ___ S. Ct. ___, 2012 WL 932019 (Mar. 21, 2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant to reject a plea, the *Strickland* standard continues to apply. As in *Hill*, 474 U.S. at 58, the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. *See Lafler*, 2012 WL 932019, at **6-9; *see also Missouri v. Frye*, ___ S. Ct. ___, 2012 WL 932020, at *8 (Mar. 21, 2012) (expressly holding that the failure to communicate a formal plea offer within the fixed expiration date of the offer constitutes the ineffective assistance of counsel). The *Lafler* Court thoroughly rejected the argument that a subsequent fair trial renders counsel's earlier ineffective assistance irrelevant. 2012 WL 932019, at *9.

There exists no basis for Petitioner to claim that his counsel misled him into a plea agreement. The record does not support Petitioner's claim that counsel failed to inform Petitioner about any aspect of his plea agreement. Petitioner was aware of the promises that were made and the benefits of his plea agreement. The plea agreement was clearly stated by the court when the court accepted the plea. The judge never indicated that Petitioner would not be sentenced to consecutive terms. In fact, the record clearly establishes that Petitioner was very aware of the possibility that he could be sentenced to consecutive terms. At best, Petitioner hoped that he would not receive consecutive terms of imprisonment based upon the alleged statement that the judge made well before the plea was entered indicating that he was not inclined to sentence Petitioner to consecutive terms. However, even if the judge made that statement to defense counsel during a pretrial conference, that statement did not mean that he would not under any circumstances sentence Petitioner to consecutive terms. Petitioner could have attempted to negotiate a better plea bargain. He may have tried. Exactly what occurred during plea bargain negotiation is not a matter of record. The fact remains that Petitioner entered into a plea agreement that resulted in four of his six counts being dismissed.

In addition, the prosecutor agreed to drop the habitual charge which would have enhanced his sentence. Petitioner could have faced additional terms of imprisonment and much longer terms of imprisonment. The plea deal negotiated by counsel on Petitioner's behalf, clearly shows that Petitioner received effective representation of counsel.

Similarly, Petitioner has clearly failed to show ineffective assistance of appellate counsel. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit.");*Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). In the opinion of the undersigned, Petitioner has not shown ineffective assistance

of appellate counsel. In other word, Petitioner cannot show that his appellate counsel failed to present any claim to the Michigan Court of Appeals that had merit.

Petitioner claims that the Michigan Court of Appeals erred by not remanding the case to the trial court after the trial judge improperly changed the official transcript in violation of the state court rules. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, in the opinion of the undersigned, Petitioner's argument should be dismissed.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: June 16, 2015 /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE